UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BRIAN WILLIAMS,

Plaintiff,

v.

IFEOMA OKEKE, et al.,

Defendants.

Case No. 26-cv-00693-NW

**ORDER SCREENING COMPLAINT, DISMISSING WITH LEAVE TO AMEND**

Plaintiff Brian Williams filed a pro se civil rights lawsuit related to his medical care and conditions of confinement at California Training Facility in Soledad, California ("CTF").  ECF No. 1.  The Complaint is now before the Court for screening pursuant to 28 U.S.C. § 1915A(a).  For the reasons set forth below, the Complaint is **DISMISSED WITH LEAVE TO AMEND**.

## I.    BACKGROUND

Williams raises several claims against Defendants in their individual and official capacities.[1]  He seeks monetary and unspecified injunctive relief.

### A.    Medical Claims

Williams alleges that Defendant Ifeoma Okeke, a primary care provider with California Correctional Health Care Services ("CCHCS"), failed to inform or treat Williams for chronic kidney disease for more than one year after he was diagnosed with the condition on February 14, 2024—information which was apparently captured in Williams' medical records but never shared with him until he obtained copies of the records several months after the diagnosis.  Williams alleges that chronic kidney disease is considered a "silent killer," and requires treatment to slow its

---

[1] Unless otherwise noted, the allegations in this section are from Williams' Complaint, ECF No. 1.

progression.  ECF No. 1 at 7.  Williams also states that he was not provided information about the proper eating plan for prisoners with chronic kidney disease, which limits intake of popular foods and fruits high in potassium, to slow progression of kidney disease.  Williams' grievance and appeal regarding Okeke's failure to inform or treat him for chronic kidney disease were subsequently denied by the CCHCS.  Williams asserts that the failure to provide him with the eating plan violates prison regulations, and that these Defendants' actions violated the Eighth and Fourteenth Amendments, as well as the California Tom Bane Civil Rights Act ("Bane Act").

### B.    Rules Violation Report Claims

Williams states that on October 30, 2024, Defendant Rolando Casi, a correctional officer at CTF, prepared a rules violation report ("RVR") falsely accusing Williams of refusing a housing assignment.  In the RVR, Casi asserted that Williams said, "I'm going to refuse," in response to Casi's instructions that Williams move to a different cell.  ECF No. 1 at 13.  Prior to his disciplinary hearing, Williams procured the testimony of a fellow prisoner, McCurty, who stated that Williams never said he was unwilling to move.  However, on November 6, 2021, at the disciplinary hearing for the RVR, Defendant C. Alapisco, who was the Senior Hearing Officer, allegedly refused to allow Williams to call McCurty as a witness.  Williams asserts that Casi and Alapisco's actions violated his Fourth, Fifth, and Fourteenth Amendment rights, and violated California Penal Code sections 132 and 134, which prohibit the filing or preparing of forged or fraudulent documents.  Williams' attached exhibits show he was assessed 90 days of credits as a result of the guilty finding.

### C.    Mail Room Claims

Defendant Robbin Strickland[2] is a correctional counselor at CTF.  On October 12, 2023, Williams allegedly gave Strickland an *in forma pauperis* form to mail to the district court.  On October 26, 2023, Strickland returned the mailing to Williams and said that "[t]hey sent it back."[3]

---

[2] This Defendant is referred to as "Stricklin" in some parts of the Complaint and "Strickland" in others.  *See* ECF No. 1 at 3, 18.  As "Strickland" appears more prevalent, the Court will use this name to refer to the Defendant.

[3] It is unclear who Strickland was referring to based on the allegations in Williams' Complaint.

United States District Court
Northern District of California

ECF No. 1 at 19.  Williams filed a grievance and appeal regarding Strickland's actions, but they were denied.  He asserts that Strickland's actions violated CDCR regulations and his First Amendment right to meaningful access to the courts.  He also alleges Strickland's actions were "retaliatory."  *Id.* at 21.

### D. Supervisor Claims

Defendant Edward Borla is, and was at the time of the incidents, the warden of CTF; he is allegedly responsible for training of primary care providers and correctional staff at CTF. Defendant Martin Macombe is the current Secretary of CDCR and is allegedly responsible for operation of the prison system, including "implementation of an ongoing arbitrary policy and practice of allowing staff to violate Incarcerated Persons['] constitutional rights without accountability."  ECF No. 1 at 4.  Williams contends that these supervisory Defendants jointly and/or severally deprived him of his First, Fifth, Eighth, and Fourteenth Amendment rights by failing to adequately train their correctional officers and healthcare providers.  Williams also alleges that CDCR's official policy and/or customs and practice resulted in multiple violations of his constitutional rights as alleged against Defendants Okeke, Casi, Alapisco, and Strickland.

## II. LEGAL STANDARD

Federal courts engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer, or an employee of a governmental entity.  28 U.S.C. § 1915A(a).  In its review, the Court must identify any cognizable claims, and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief.  *Id*. at § 1915A(b)(1), (2).  Pro se pleadings must be liberally construed.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although a complaint "does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . .  Factual allegations must be enough to raise a right to relief above

the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). A complaint must proffer "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. The United States Supreme Court has explained the "plausible on its face" standard of *Twombly*: "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the alleged deprivation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Liability may be imposed on an individual defendant under 42 U.S.C. § 1983 if the plaintiff can show that the defendant's actions actually and proximately caused the deprivation of a federally protected right. *Lemire v. Cal. Dep't of Corr. & Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988). Actions in this context include when a defendant engages in the affirmative act, participates in another's affirmative act, or fails to perform a legally required act. *Leer*, 844 F.2d at 633.

## III.    DISCUSSION

The Court discusses each group of claims below.

### A.    Federal Rule of Civil Procedure 20

At the outset, the Court notes that Williams raises a plethora of claims naming different Defendants and unrelated incidents, and he largely does not comply with Federal Rule of Civil Procedure 20. "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). When there are multiple defendants, they may be joined in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). Accordingly, while "multiple claims against a single party are fine, . . . Claim A against Defendant 1 should not be

United States District Court
Northern District of California

joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Scott v. McCay*, Case No. 24-cv-01335-HSG, 2024 WL 3033619, at *2 (N.D. Cal. Jun. 17, 2024).

As explained further below, Williams states a cognizable claim of deliberate indifference against Okeke for failing to treat him for chronic kidney disease for more than one year. He also states a cognizable procedural due process claim against Alpisco. These claims, however, do not appear to be related to each other, occurred months apart, do not share common Defendants other than the supervisory Defendants against whom Williams has not stated a claim, and do not share common issues of law. Accordingly, the Court grants Williams **LEAVE TO AMEND** his complaint so he can explain why these claims are related or, alternatively, choose the claims he wants to pursue in this lawsuit and voluntarily dismiss the rest so he can pursue them in separate actions.

### B. Medical Treatment Claims

#### 1. Eighth Amendment

##### a. Okeke

The Eighth Amendment protects prisoners from inhumane conditions of confinement and requires that prison officials take reasonable measures to guarantee the safety of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *see Helling v. McKinney*, 509 U.S. 25, 31 (1993). Accordingly, the Eighth Amendment forbids the government from demonstrating "deliberate indifference to [the] serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim for deliberate indifference, an incarcerated person must demonstrate, first, a "serious medical need," and second, that the prison acted or failed to act in such a harmful way that it evidenced deliberate indifference such that it "offend[s] 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106; *see McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992).

Deliberate indifference can be caused by prison medical staff providing inadequate or delayed medical care. *Estelle*, 429 U.S. at 104–05. The circumstances, nature, and duration of any deprivation or conditions are critical in determining whether the conditions complained of are

grave enough to form the basis of a viable Eighth Amendment claim. *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2006). "Under this standard, an inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim." *Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022).

Liberally construed, Williams' allegation that Okeke diagnosed him with chronic kidney disease—a serious medical condition—but failed to inform Williams of the diagnosis or provide treatment for the condition until more than one year later states a cognizable claim against Okeke for deliberate indifference in violation of the Eighth Amendment.[4]

### b.    CCHCS

To the extent Williams is attempting to raise a claim that his Eighth Amendment rights were violated by CCHCS, he has not alleged a cognizable § 1983 claim. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (9185). As a state entity, CCHCS is not a "person" under § 1983 and is therefore not a proper defendant for this claim. *See Bennett v. California*, 406 F.2d 36, 39 (9th Cir. 1969) (California Adult Authority and CDCR not persons within meaning of Section 1983). CCHCS is also subject to Eleventh Amendment immunity for damages claims under 28 U.S.C. § 1983. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 237–38 (1985) (Eleventh Amendment bars from federal courts suits against a state or its agencies by its own citizens, citizens of another state, or citizens or subjects of any foreign state) (superseded by statute on other grounds).

However, Williams may be able to state a claim against individual defendants at CCHCS who were involved in his alleged denial of healthcare. The claim is **DISMISSED WITH LEAVE TO AMEND** so Williams may attempt to name specific individuals at CCHCS who showed deliberate indifference to his medical needs, and their specific actions, provided he can do so in good faith. Alternatively, if Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his medical claims in a separate lawsuit.

---

[4] If Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his medical claims in a separate lawsuit.

United States District Court
Northern District of California

### 2.     Bane Act

Williams alleges that Okeke's actions also violated the Bane Act.  The Bane Civil Rights Act provides a private right of action for damages against any person who attempts or does interfere "by threats, intimidation, or coercion, with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or law of the United States, or of the rights secured by the Constitution or laws [of California]."  Cal. Civ. Code § 52.1(b).  "The essence of a Bane Act claim is that the defendant, by the specified improper means (e.g., threats, intimidation, or coercion), tried to or did prevent a plaintiff from doing something he . . . had the right to do under the law." *Shoyoye v. Cnty. of Los Angeles*, 203 Cal. App. 4th 947, 956 (2012) (quotations and citations omitted).

Williams' allegation is conclusory only, and he provides no factual allegations to sustain a claim under the Bane Act.  If Williams wishes to continue pursuing this claim against Okeke, he must provide further information about how Okeke's actions amounted to threats, intimidation, or coercion, and how those actions tried to prevent Williams from "doing something he . . . had the right to do under the law."  *Shoyoye*, 203 Cal. App. 4th at 956.  This claim is **DISMISSED WITH LEAVE TO AMEND**.  Alternatively, if Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his medical claims in a separate lawsuit.

### C.     Rules Violation Claims

A prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of a rules violation.  *See Gathrite v. Diaz*, No. 25-cv-02369-RMI, 2025 WL 1616639, *2 (N.D. Cal. Jun. 6, 2025); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989); *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  Accordingly, the claim that Casi violated his due process rights by writing a false report fails to state a cognizable claim.  Moreover, Williams has not shown that the criminal laws he cites give rise to a private cause of action against Casi for filing a false report.  *United States v. Batchelder*, 442 U.S. 114, 124 (1979) ("When a criminal statute is violated, the question of whether to prosecute and what criminal charges to file or bring are decisions vested in the discretion of a prosecutor."); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092

United States District Court
Northern District of California

(9th Cir. 1980) (noting that criminal statutes generally do not provide any express private cause of action or other basis for civil liability).

However, Williams states a claim against Alapisco to the extent that Alapisco allegedly denied Williams procedural due process during Williams' rules violation hearing. *See Hanrahan v. Lane*, 747 F.2d 1137, 1140–41 (7th Cir. 1984). While prisoners facing disciplinary proceedings are not entitled to the full panoply of rights due to a criminal defendant, they are nevertheless entitled to certain minimum procedural due process protections where serious rules violations are alleged, the sanctions to be applied implicate state statutes or regulations which narrowly restrict the power of prison officials to impose the sanctions, and the sanctions are severe. *See Wolff v. McDonnell*, 418 U.S. 539, 556–57 (1974); *id.* at 571–72 n.19. As relevant here, *Wolff* requires that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566.

Liberally construing Williams' allegation that Alapisco refused to allow him to call McPurty as an exculpatory witness during his disciplinary hearing, Williams states a cognizable procedural due process claim against Alapisco.[5]

### D.    Mail Claims

#### 1.    Access to Courts

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996). To establish a claim for a violation of the right of access to the courts, the prisoner must show that there was an inadequacy in the prison's legal access program that caused him an actual injury. *Id.* at 350–51. To prove an actual injury, the prisoner must show that inadequacy hindered him in presenting a non-frivolous claim concerning his conviction or conditions of confinement. *See id*. at 355. Examples of impermissible hindrances include:  a prisoner whose complaint was dismissed for failure to satisfy a technical requirement that, because

_____

[5] If Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his procedural due process claim in a separate lawsuit.

8

United States District Court
Northern District of California

of deficiencies in the prison's legal assistance facilities, he could not have known; or, a prisoner who had "suffered arguably actionable harm" that he wished to bring to the attention of the court, but was so stymied by the inadequacies of the prison's services that he was unable to file a complaint. *See id.* at 351.

Even liberally construing Williams' allegations, Williams has not alleged that Strickland's actions resulted in an actual injury, and he therefore fails to state a claim for violation of his right to access the courts. This claim is **DISMISSED WITH LEAVE TO AMEND** so he may address the deficiency identified above. Alternatively, if Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his First Amendment claims in a separate lawsuit.

### 2.    Retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled [or could chill] the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005) (footnote and citation omitted); *accord Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Filing a grievance is considered protected conduct for the purposes of the First Amendment. *See Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003).

Liberally construed, Williams fails to state a claim for retaliation against Strickland because he does not allege that Strickland took adverse action against Williams "because of" Williams' protected First Amendment conduct. *Rhodes*, 408 F.3d at 567. This claim is **DISMISSED WITH LEAVE TO AMEND** so he may address the deficiencies identified above. Alternatively, if Williams chooses to move forward with a different claim in this matter, he may voluntarily dismiss this claim without prejudice so he can pursue his First Amendment claims in a separate lawsuit.

### E.    Federal Claims Against Borla and Macomber

Williams names Borla and Macomber as Defendants based on alleged liability as the

United States District Court
Northern District of California

supervisors for other Defendants.

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of *respondeat superior*. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979) (no liability where there is no allegation of personal participation). "A prison official in a supervisory position may be held liable under § 1983, however, 'if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation.'" *Lemire*, 726 F.3d at 1074–75 (citation omitted). "This causal connection can include: '1) [the supervisors'] own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) [their] conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* at 1075 (citation omitted). If a plaintiff alleges that a defendant failed to properly train his subordinates, the plaintiff must show that (1) the training program was inadequate "'in relation to the tasks the particular officers must perform'"; (2) the government officials were deliberately indifferent "'to the rights of persons with whom the [officials] come into contact'"; and (3) the inadequacy of the training "'actually caused' the constitutional deprivation at issue." *Merritt v. Cty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir. 1989); *see also Kirkpatrick v. Cnty. of Washoe*, 843 F.3d 784, 793–94 (9th Cir. 2016).

Here, Williams' general allegations amount to "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. As noted, Williams alleges that Borla and Macomber exhibited "indifference to the constitutional rights of inmates" and accused both Defendants of maintaining "an official policy and custom [of] permitting, allowing, ratifying and condoning the occurrence of the types of wrongs and misconducts set forth herein." ECF No. 1 at 22. Although Williams alleges that Borla and Macomber failed to train correctional officers and healthcare providers, he does not explain how the training was inadequate or allege that either Defendant was aware of the violations at issue. To the extent that Williams also alleges that CDCR has an "official policy and/or customs and practice" that led to his constitutional rights being violated, Williams fails to identify specific policies or practices that led to the alleged constitutional violations. *See* ECF No. 1 at 22–23. Without more factual

United States District Court
Northern District of California

information as to Defendants' actions and the policies and practices at issue, Williams fails to state cognizable claims against these Defendants. *See Guzman v. Newscomb*, No. 25-cv-01572-HDV-KES, 2025 WL 3236202, *8 (C.D. Cal. Oct. 17, 2025) (dismissing claim against supervisors where it was unclear "how Plaintiff believe[d] the actions or inactions of these Defendants caused his assault or the lack of proper medical care," and where the plaintiff failed to allege "any facts showing that these Defendants were present at the [incident] or are aware of it" or explain "who he believes should have been better trained, how they should have been trained, and why these Defendants knew or had reason to know of the lack of training.").

The claims against Borla and Macomber are **DISMISSED WITH LEAVE TO AMEND** so Williams may address the deficiencies identified above.

### F.    Unlinked Claims

Williams also cites several statues and a treaty without providing any factual basis for doing so. ECF No. 1 at 2.

He first cites to the Americans with Disabilities Act ("ADA") and the Unruh Act without specifying which Defendant(s) allegedly violated each Act; moreover, the Court notes that Williams has not made any allegations suggesting he was denied reasonable accommodations or discriminated against due to his disability—or any other protected status—as required to state a claim under these statutes. *See Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (noting elements of claim for damages under Title II of the ADA); *see also Barker v. Cal. Dep't of Corr. and Rehabilitation*, No. 13-cv-1793 KJN P, 2015 WL 3913546, *7 (E.D. Cal. Jun. 25, 2015) (discussing elements of Unruh Act claims, and collecting cases that have determined that prisoners' claims under the Unruh Act must be dismissed on basis of Eleventh Amendment and state law immunity). Williams also cites to the United Nations Standard Minimum Rules for the Treatment of Prisoners ("Minimum Rules"). It is well-established that the Minimum Rules do not "serve as a source of private rights," and are therefore not actionable through a lawsuit under 42 U.S.C. § 1983. *Serra v. Lappin*, 600 F.3d 1191, 1197 (9th Cir. 2010).

Accordingly, he fails to state a claim under these provisions. As any attempt to amend the claims under the Unruh Act and Minimum Rules would be futile, those claims are **DISMISSED**

11

**WITHOUT LEAVE TO AMEND**.  *See Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018) ("Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal.").  The ADA claim is **DISMISSED WITH LEAVE TO AMEND** so he may explain the factual basis for his claim and explain why it is properly joined in this action, or, alternatively, dismiss the claim from the lawsuit and pursue it separately.

### G.    Official Capacity Claims

To the extent Williams asserts 42 U.S.C. § 1983 claims against Defendants in their "official capacities," he does not state cognizable claims.  Because "a suit against a state official in his or her official capacity is not a suit against the official but rather is . . . no different from a suit against the State itself," such suits cannot proceed unless Eleventh Amendment immunity has been specifically abrogated by federal statute or that the state has waived its immunity.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation modified).  Moreover, state agencies and state officials acting in their official capacities are not "persons" against whom a civil rights claim for money damages may be asserted.  *Id*.  Accordingly, the 42 U.S.C. § 1983 claims against Defendants in their official capacities are **DISMISSED WITHOUT LEAVE TO AMEND**.  *See Wheeler*, 894 F.3d at 1059.

## IV.    CONCLUSION

The Court orders as follows:

1. Williams states the following cognizable claims:

   a. Eighth Amendment deliberate indifference claim against Okeke;

   b. Fifth and Fourteenth Amendment procedural due process claim against Alpisco.

2. The remaining claims are **DISMISSED** as specified above.

3. If Williams wishes to pursue his cognizable claims in this action, he must provide, in an amended complaint, information about how his cognizable claims are related to each other.  Alternatively, he may choose which claims he wishes to pursue in this action and notify the Court by letter or by including only those claims in an amended complaint.

4. Any notice of voluntary dismissal of certain claims or amended complaint must be filed within **twenty-eight (28) days** of the date this order is filed. If Williams elects to file an amended complaint, he must include the caption and civil case number used in this order and the words "Amended Complaint" on the first page. Because an amended complaint completely replaces the original, Jones must include all claims and allegations of fact to support his claims. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). Williams is cautioned that he may not incorporate material from the prior complaint by reference. He must reallege all claims he wants to pursue within the body of his amended complaint, including any cognizable claims.

5. Failure to notify the Court which claims he wishes to pursue in this matter or file an amended complaint within the designated time will result in this action's dismissal without prejudice.

6. It is Williams' responsibility to prosecute this case. He must keep the Court informed of any change of address by filing a separate paper with the Clerk headed "Notice of Change of Address," and must comply with the Court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b).

7. The Clerk is requested to send a blank prisoner complaint form to Williams with his copy of this order.

**IT IS SO ORDERED.**

Dated: May 19, 2026

_____
Noël Wise
United States District Judge